IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUZANNE S., ) | |
| ) | No. 25 C 4661 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Suzanne S. appeals the Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

**Background**

On July 28, 2022, plaintiff applied for benefits, alleging a disability onset date of January 14, 2022. (R. 21.) Her application was denied initially, on reconsideration, and after a hearing. (R. 21-33.) Plaintiff appealed to the Appeals Council, which denied review (R.1-3), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 14, 2022, the alleged onset date. (R. 23.) At step two, the ALJ found that plaintiff has the severe impairments of "diabetes with polyneuropathy status-post right great toe amputation and partial amputation of right 2nd toe; right foot osteoarthritis; osteoarthritis of shoulders status-post bilateral reverse total shoulder arthroplasty and proximal biceps tenodesis; lumbar degenerative disc disease; and obesity." (R. 24.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. (R. 25.) At steps four and five, respectively, the ALJ found that plaintiff has the RFC to perform her past relevant work as a town clerk and a vice president as generally performed, and thus she is not disabled. (R. 25-33.)

Plaintiff argues that the VE's testimony is not supported by the evidence, and the ALJ's reliance on it is error. The ALJ found that plaintiff can perform her past relevant work as a town clerk and a vice president, as those jobs are defined in the Dictionary of Occupational Titles ("DOT") and as they are generally performed. (R. 32-33.) Plaintiff argues that both positions, as she performed them, were composite jobs. Composite jobs are those which "have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82–61, 1982 WL 31387, at *2 (Jan. 1, 1982). "Because by definition a composite job will have no DOT counterpart, the ALJ may rely on evidence provided by a VE to explain the nature of the claimant's past relevant work." *Wiggins v. Colvin*, No. 12 CV 9384, 2015 WL 2398478, at *5 (N.D. Ill. May 18, 2015). "But where a VE relies only on the DOT as a source of information supporting his opinion, then his information is considered no better than the DOT in identifying the claimant's past work." *Id.*

The DOT describes the town clerk job as follows: "Performs variety of clerical and administrative duties required by municipal government: Prepares agendas and bylaws for town council; records minutes of council meetings; answers official correspondence; keeps fiscal records and accounts; and prepares reports on civic needs." DOT, Code: 243.367-018, *available at* [Dictionary of Occupational Titles DOT - Job Descriptions - www.occupationalinfo.org](http://www.occupationalinfo.org) (last visited Jan. 27, 2026). Plaintiff says in addition to these functions, when she was town clerk she also met with constituents, attended meetings in the community, and was "the election official and all the things that go with the clerk duties." (R. 59-60.) Plaintiff did not, however, testify that she: compiled and verified voter lists from official registration records; requested identification of voters at a polling place; obtained signatures and recorded names of voters to prevent voting of unauthorized persons; distributed ballots to voters and answered questions concerning voting

3

procedure; and counted valid ballots and prepared official reports of election results, which are the job duties of an election official. See DOT, Code 205.367-030, *available at*, Dictionary of Occupational Titles DOT - Job Descriptions - www.occupationalinfo.org (last visited Jan. 27, 2026). Thus, the ALJ's failure to treat the town clerk position as a composite job was not error.

Plaintiff also contends that her past work as a vice president of client relationships and training at Kilbryde, Sharp should have been considered a composite job. According to the DOT, a vice president:

> Directs and coordinates activities of one or more departments, such as engineering, operations, or sales, or major division of business organization, and aids chief administrative officer in formulating and administering organization policies: Participates in formulating and administering company policies and developing long range goals and objectives. Directs and coordinates activities of department or division for which responsibility is delegated to further attainment of goals and objectives. Reviews analyses of activities, costs, operations, and forecast data to determine department or division progress toward stated goals and objectives. Confers with chief administrative officer and other administrative personnel to review achievements and discuss required changes in goals or objectives resulting from current status and conditions. May perform duties of PRESIDENT (any industry) 189.117-026 during absence. May serve as member of management committees on special studies.

*See* DOT, Code 189.117-034, available at, Dictionary of Occupational Titles DOT - Job Descriptions - www.occupationalinfo.org (last visited Jan. 27, 2026). Plaintiff contends that this was a composite job because in addition to the DOT duties, she also went out in the field every month and delivered samples of products that weighed twenty-five to thirty pounds to customers. (ECF 16 at 9-10; *see* R. 62, 70.) Plaintiff did offer that testimony, but she was not referring to the vice president job. Rather, she testified that as vice president she was not a part of the sales team that would go out and sell to clients but she had "business review to explain how they were reporting and what the sales team was doing," which she did remotely. (R. 62.) She also said she was "mainly in an office, seated, computer, phone, that kind of thing" and did not have to do any

4

lifting in that job. (*Id.*) Given plaintiff's testimony about the vice president position, the ALJ's failure to treat it as a composite job is not error.

Plaintiff also challenges the ALJ's assessment of the opinion of Dr. Mikell, one of the state medical consultants. The ALJ said this about the doctor's opinion:

> As to the State Agency opinion at the reconsideration level, the undersigned does not find the degree of restriction indicated therein persuasive. Specifically with respect to manipulative ability, the undersigned notes that limitations to only occasional reaching laterally with both upper extremities is not supported by the medical evidence of record or by claimant's self-reported activities. The undersigned is mindful of evidence of a history of arthritis and right rotator cuff repair; however, while she may have some pain in the shoulders, the objective findings do not support that she could not reach more than 2 to 3 hours out of 8. In fact, the undersigned notes that the State Agency medical consultants also mention claimant uses a cane, which would mean she is reaching with at least one upper extremity while walking or moving about. Furthermore, again, claimant has routinely reported she is able to drive, which clearly reflects an ability to reach with both upper extremities, and she has routinely reported dressing herself independently and shopping normally (Exhibits 3F; 6F).

(R. 31-32.)

The Court agrees with plaintiff that the ALJ's assessment is flawed. The ALJ said Dr. Mikell's opinion is not supported by the "medical evidence of record" or the "objective findings," but she does not identify those findings and evidence. Moreover, the ALJ said Dr. Mikell's reaching limitations were contradicted by plaintiff's ability to dress, shop, drive, and use a cane, but she did not identify any evidence that suggests those activities are incompatible with reaching limitations. Because the ALJ's assessment of Dr. Mikell's opinion is based on her personal opinion[1] rather than medical evidence, the case must be remanded.

---

[1] Perhaps the more accurate term is "uninformed conjecture." Many people with reaching limitations still find a way to dress themselves and drive. And while shopping may involve some forms of reaching, an individual's ability to shop for basic necessities does not equate to an individual's ability to do more than "occasional reaching laterally with both upper extremities." Finally, we are completely at a loss to understand how cane use with one hand, means that an individual must be able to reach with her other hand. Even if this concept had some semblance of reasonableness, the extent of "reaching" with the other hand clearly does not necessarily equate to abilities beyond "occasional reaching laterally with both upper extremities," which is the conclusion the ALJ erroneously made.

**Conclusion**

For the reasons stated above, the Court grants plaintiff's motion [16], reverses the Commissioner's decision and pursuant to the fourth sentence of 42 U.S.C. § 405(g), remands this case for further proceedings. This case is terminated.

**SO ORDERED.**               **ENTERED:  January 29, 2026**

**M. David Weisman**
**United States Magistrate Judge**